## SHEPPARD v. SHEPPARD.

Circuit Court, Lake County.
April 11, 1949.

R. P. Hamlin, Tavares, for plaintiff.

Walter Warren, Leesburg, for defendant.

T. G. FUTCH, Circuit Judge.

The plaintiff, Wilson Goin Sheppard, filed his bill seeking divorce on the grounds of violent and ungovernable temper and extreme mental cruelty. The defendant answered with flat denials of the material allegations, and by way of affirmative relief seeks separate maintenance of herself and the infant son of the parties, or, if to this court appears necessary a divorce and such maintenance.

The burden of proof was, of course, on the plaintiff in so far as his bill for divorce is concerned.

The parties both being interested to the same extent, their credibility is equal so far as interest is concerned.

As chancellor I sat through approximately thirty hours of testimony, listening carefully to the testimony and observing with great care the appearance and demeanor and manner of each witness. The appearance, demeanor and manner of the plaintiff was not such as to increase the credibility of his spoken words, but rather to decrease that credibility. His testimony shows complete domination by his father. His testimony relative to certain letters received while on board a naval craft shows that he was keeping desperately near the line between true and false, if not actually crossing it to the wrong side. There could have been no purpose in this statement other than to lead the court to understand that defendant had cared too little for him to write letters to him while he was

serving his country. He well knew that the true facts would not support any such conclusion. This incident, coupled with his appearance and demeanor on the stand, as well as his general demeanor throughout the trial, leaves little if any foundation upon which to give credit to his testimony.

While the defendant hardly took her eyes off plaintiff while either he or she was testifying, I never once saw him look her straight in the face.

Defendant, on the other hand, while giving her testimony gave every appearance of being sincere and honest in her testimony. She looked straight at the plaintiff throughout her testimony, but he did not return the look and failed to let his eyes meet hers. Her testimony was clear, convincing and reasonable.

Very little of plaintiff's testimony on the alleged grounds of divorce was corroborated by any witness and much of it was actually disproved by disinterested witnesses. The testimony of the three Rutlands, father and two sons, was so fantastic as to be utterly unbelievable, particularly when consideration is given to the sorry aspect of the senior Rutland trying to pose as an expert on the care and feeding of babies. In addition to the character of their testimony, every material statement which they or either of them made was completely discredited by young, highly respected housewives who were neighbors to the Sheppards.

Mr. and Mrs. Henry Sheppard, father and mother of the plaintiff of course cannot be said to be disinterested witnesses. But, taken at full value, their testimony falls far short of proving the allegations of the bill of complaint or corroborating plaintiff.

I was and am somewhat puzzled about the confusion of Mrs. Sheppard in her testimony relative to certain typewritten letters to her son. She first dismissed the possibility of writing the letters because her "arm was broken and she did not use a typewriter". She suggested to plaintiff's counsel that something had been added to the first letter with which she was confronted. She finally admitted that she might have had someone type the letters after she had written them with her left hand. Who the typist was has not yet been revealed.

The relief sought by plaintiff will be denied and the bill dismissed at the cost of the plaintiff.

The allegations of the defendant's counterclaim have been proven and there remains for consideration and determination the necessities of the defendant for support of herself and the child. It is evident from the proofs that the plaintiff is not receiving for his services sufficient to meet fully the needs of the defendant and the child and maintain himself. His plight is helped some by the fact that he lives with his father and mother. I am convinced that plaintiff has purposely handicapped himself so far as immediate earning power is concerned in order to satisfy selfish regulations of the guardians of his chosen profession. Perhaps the end sought will justify the present sacrifice. However, if his present income is any index to the earning power of one in the profession to which he aspires, he would be better off to take a job as bookkeeper or accountant for some business concern. His earning power in his present situation is shown to be a little over $4,500 per year, of which he must pay his father 25% for the privilege of working under the father's permit, leaving him about $3,400. His income should increase to some extent.

He can at present pay his wife $40 per week for the maintenance of herself and the child, and will be required to do so, subject to future adjustments by the court as his circumstances may justify from time to time.

The question of compensation for defendant's lawyer is a difficult one. He can not be paid what he has earned. He and plaintiff's attorney have acquitted themselves as gentlemen and able lawyers in this case. I think $500 is all that can reasonably be allowed defendant's attorney under the circumstances, in addition to $100 heretofore paid by agreement of counsel.